BLANK ROME LLP
Gregory M. Bordo (SBN 156147)
GBordo@BlankRome.com
Arti L. Bhimani (SBN 235240)
ABhimani@BlankRome.com
1925 Century Park East, 19th Floor
Los Angeles, California  90067
Telephone:  (424) 239-3400
Facsimile:  (424) 239-3434

Attorneys for Defendant
BENTLEYFORBES HOLDINGS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SK NETWORKS COMPANY LIMITED, A South Korean corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BENTLEYFORBES HOLDING, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. CV12-8997-MMM (SHx)<br><br>**DECLARATION OF C. FREDERICK WEHBA IN SUPPORT OF DEFENDANT BENTLEYFORBES HOLDINGS, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT**<br><br>Date:  December 17, 2012<br>Time:  2:00 p.m.<br>Dept.:  550<br><br>Action Filed: October 18, 2012 |

137977.00603/95104572v.1

**DECLARATION OF C. FREDERICK WEHBA**

# DECLARATION OF C. FREDERICK WEHBA

I, C. Frederick Wehba, declare as follows:

1. At all times relevant to Plaintiff SK Networks Company Limited ("SKN")'s Complaint, I was the Chairman of the Bentley Forbes Group of companies. The Benltey Forbes Group of companies includes BentleyForbes Holdings, LLC ("BentleyForbes Holdings") and BentleyForbes Equities, LLC ("BentleyForbes Equities"). I have been in the business of managing the purchasing, financing, and selling of commercial real estate for more than 40 years. I was personally involved in the negotiation and documentation of the transaction at issue in this proceeding. I make this declaration of my personal knowledge or from my review of files that I maintained for BentleyForbes Holdings and BentleyForbes Equities in the ordinary course of business, and could and would testify competently on the matters stated in this declaration.

2. On or about December 30, 2011, SKN and BentleyForbes Equities entered into a transaction wherein SKN agreed to sell certain real property located in Seoul, South Korea (the "Property") to BentleyForbes Equities for US$25 million and to concurrently lease the Property back for a period of at least 20 years, paying rent in excess of $40 million (the "Transaction").

3. The Transaction is a type known as credit tenant lease ("CTL") financing. Based upon the lease of the Property by SKN, BentleyForbes Equities intended to finance the purchase price. CTL financing is a unique and highly specialized type of lending designed to fund the purchase or refinance of real estate that is leased to an investment grade tenant. The CTL process differs from traditional commercial mortgage lending because the lease, rather than the real estate itself, is the primary collateral that backs the loan. It is not unusual for the owner of the property to realize profit of as much as 15% of the purchase price upon resale. This profit is derived from the value of the leasehold as opposed to the property itself.

137977.00603/95104572v.1                                    1

DECLARATION OF C. FREDERICK WEHBA

4. The Transaction was documented through a Sale and Purchase Agreement (the "SPA"), a Lease Agreement (the "Lease"), a Closing Statement (the "Closing Statement") and a Promissory Note (the "Note").

5. Attached hereto is as Exhibit "A" is a true and correct copy of the SPA. Pursuant to Section 11.6 of the SPA all of the Transaction Documents formed a single integrated agreement. The Transaction Documents include the SPA, the Lease, the Closing Statement and the Note.

6. Section 2.2 of the SPA provides that the purchase price for the property was to be US$25 million. Section 3.2 of the SPA states that the method of payment would be as prescribed by the Closing Statement. The Closing Statement is defined in the SPA as the "settlement agreement, dated December 30, 2011, entered into by and between Seller and Purchaser in relation to, among other things, the settlement of the Purchase Price and other expenses to be paid on the Closing Date. (*See*, Exhibit "A", ¶ 1.1.)

7. Concurrent with the parties' execution of the SPA, the parties also executed the Closing Statement which contained provisions for the manner of paying the purchase price, allocation of payment of various transaction costs, payment by SKN of a security deposit and interim rent, and, most importantly, the parties' remedies in the event that BentleyForbes Equities was unable to obtain the contemplated permanent financing and the Note was therefore not paid. A true and correct copy of the Closing Statement is attached hereto as Exhibit "B".

8. Section 1 of the Closing Statement lists five different categories Transaction costs totaling US$1,322,455 to be paid by SKN <u>regardless of whether the Transaction closed or the SPA was terminated</u>. SKN failed to pay and continues to fail to pay each and every one of these charges.

9. Section 2 of the Closing Statement identifies the net total purchase price for the Property as US$23,892,677.

10. Section 3 of the Closing Statement sets forth the Method of Payment. Specifically, BentleyForbes Equities was required to issue the Note in the amount of US$11,653,922.60. In addition, SKN was to receive the proceeds of two bridge loans obtained by SKN, using the Property as collateral, totaling US$10,988,754.40. SKN was required to pay BentleyForbes AMC, the new property manager, a security deposit in the amount of US$1,250,000.

11. At all times, it was the intent and understanding of the parties that the purchase price would be financed in its entirety, which is not at all unusual in CTL transactions.

12. SKN was extremely eager, and even required, that the Transaction close by December 31, 2011 which did not afford enough time for BentleyForbes Equities to secure its permanent CTL financing. In order to close the Transaction by year end, the parties agreed that BentleyForbes Equities would execute the Note as a temporary placeholder and that two bridge loans would be obtained with SKN receiving the proceeds. The parties intended for the bridge loans and the Note to be repaid when BentleyForbes Equities obtained financing from US lenders. (*See*, Closing Statement, ¶ 6.)

13. The Note was executed on December 30, 2011, along with the other Transaction Documents. The payor on the Note is BentleyForbes Holdings, LLC. This Bentley Forbes entity was not the intended payor. I do not know why or how Bentley Forbes Holdings came to be listed as the payor on the Note.

14. All of the other Transaction Documents state that BentleyForbes Equities is the party to the Transaction. Section 7 of the Closing Statement expressly states that the obligor on the Note is to be BentleyForbes Equities.

15. In any event, in Section 7 of the Closing Statement, the parties expressly agreed upon the remedies if the Note was not paid. It was agreed and understood that collection of the Note was <u>not</u> a remedy available to SKN. The Note represented a

portion of the purchase price to be paid to SKN as soon as the contemplated permanent CTL financing from a U.S, lender was obtained. Because the financing had not yet been obtained when SKN wanted to close the Transaction, the parties understood that there was a possibility that the financing would not be obtained and the parties therefore agreed upon what was to occur in that event.

16. Accordingly, Section 7 of the Closing Statement provides that "[i]n the event that Purchaser fails to honor the Note under Section 3(a) of this Closing Statement and pay to Seller the sum payable under the Note in accordance with its terms, Purchase and Seller shall unwind the transactions contemplated under the SPA in accordance with the provisions of Annex A to this Closing Statement."

17. Annex A sets forth two different remedial scenarios depending upon whether BentleyForbes Equities was able to obtain the contemplated loan. Section 1 states that: "**In the event the contemplated loan transaction with the proposed U.S. lender(s) *is* consummated, but Purchaser fails to honor the Note under Section 3(a) of the Closing Statement and pay to Seller the sum payable under the Note in accordance with its terms:** . . ." (emphasis added), the parties shall take various steps including SKN repaying the bridge loans, BentleyForbes Equities returning the Property to SKN, and BentleyForbes Equities bearing various costs of the transaction. (*See*, Closing Statement, Annex, pg. 1, Sec. 1.) The contemplated loan transaction was not consummated. Therefore, the remedial provisions of Section of Annex are inapplicable.

18. Section 2 of Annex A states the second remedial process required of the parties if the first is not triggered. Section 2 states that: "**In the event the contemplated loan transaction with the proposed U.S. lender(s) is *not* consummated, but Purchaser fails to honor the Note under Section 3(a) of the Closing Statement and pay to Seller the sum payable under the Note in accordance with its terms:** . . ." (emphasis added), the following steps shall be taken:

SKN shall repay the bridge loans, BentleyForbes Equities shall return the Property, and the parties shall aggregate the costs of the transaction under the SPA and shall each be liable for payment of 50% of said expenses. Because BentleyForbes Equities did not consummate the contemplated loan transaction, Section 2 of the Annex to the Closing Statement governs the parties' rights. If the Note is unpaid, SKN's remedy is an unwinding of the Transaction, not collection of the Note.

19. During the negotiations, SKN represented that its credit standing was "investment grade". This was a critical aspect of the Transaction since the ability of BentleyForbes Equities to obtain CTL financing was dependent almost entirely on the soundness of the Lease. BentleyForbes Equities relied extensively on SKN's representations and those of its agents concerning the companies' qualifications as an investment grade tenant. Ultimately, because SKN's representations were false, BentleyForbes Equities was unable to secure the contemplated financing and, as a result, the Note was not paid.

20. Notwithstanding the applicability of Section 2 of the Annex to the Closing Statement, SKN failed to take any action to invoke or implement the proscribed remedies. Nonetheless, SKN retained the bridge loan proceeds of nearly US$11 million, failed to make any of the payments (US$1,322,455) required of it under the Closing Statement whether or not the contemplated financing was obtained by BentleyForbes Equities, failed to pay the required security deposit (US$1,250,000) and interim rent (US$50,000/month) and failed to make any of the payments required of it under the Lease. Many of SKN's breaches occurred before it was even determined that BentleyForbes Equities would be unable to consummate the contemplated financing from a U.S. lender.

21. SKN failed to abide by every one of its obligations under the Closing Statement, which obligations were effective on December 30, 2011, well before it was anticipated that BentleyForbes Equities would consummate the contemplated loan.

22.     It was at all times the parties' intent and understanding that payment of the Note was contingent upon BentleyForbes Equities consummating the contemplated loan. Section 7 of the Closing Statement and Sections 1 and 2 of the Annex to the Closing Statement were expressly intended to confirm this contingency.

23.     At the time the Transaction Documents were executed, SKN executed the Lease with BentleyForbes Equities. A true and correct copy of the executed Lease is attached hereto as Exhibit "C". The initial term of the Lease is 20 years over which period SKN is obligated to pay BentleyForbes Equities over $40 million in rent and management fees. To the extent that the Note could somehow be considered a 'stand alone' obligation, so to then could the Lease which would subject SKN to massive financial liability. Neither document was intended to create a 'stand alone' obligation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed November 26, 2012, at Los Angeles, California.

_____
C. Frederick Wehba